IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MORPHOSYS AG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-221 (LPS) (CJB) |
| | ) |
| JANSSEN BIOTECH, INC., | ) |
| GENMAB US, INC. and GENMAB A/S, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR REARGUMENT, CLARIFICATION AND/OR
CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

OF COUNSEL:

Michael A. Morin
David P. Frazier
Emily K. Sauter
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Roger J. Chin
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Michael R. Seringhaus
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94306
(650) 328-4600

November 9, 2017

MORRIS, NICHOLS, ARSHT &TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendants Janssen Biotech,
Inc., Genmab US, Inc., and Genmab A/S*

Defendants seek reargument or, in the alternative, certification of a critically important issue that has far-reaching implications beyond this case: the temporal scope of a privilege waiver when an alleged infringer chooses to rely on opinions of counsel to defend against willful infringement. Questions regarding the scope of privilege waivers have taken on renewed significance in the wake of *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016). Because objective reasonableness is no longer the standard for willfulness, opinions of counsel will once again play a prominent role in defending against willful infringement.

This Court held that Defendants broadly waived attorney-client and work product protections by relying on opinions of counsel provided after the patents issued and before this lawsuit was filed. Specifically, the Court ordered discovery that extends forward to communications made after the complaint was filed ("post-litigation communications") and backwards to communications made before the patents issued ("pre-patent communications"). Defendants believe that decision was in error. It cannot be squared with the Federal Circuit's en banc decision in *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007), it conflicts with decisions of other district courts post-*Seagate*, and it erects an unfounded and difficult to administer distinction between trial and in-house counsel. At the very least, the Federal Circuit should have the opportunity to clarify the temporal limits so that in-house counsel can understand what they are waiving when a defendant chooses to vigorously defend against a willful infringement charge by relying on advice of counsel.[1]

---

[1] Defendants recognize that this Court recently denied reargument and certification in a case raising similar issues. *See Johns Hopkins Univ. v. Alcon Labs., Inc.* ("*JHU*"), C.A. No. 15-525-LPS/SRF, slip op. (D. Del. Nov. 8, 2017). Defendants respectfully disagree with the Court's decision and urge reconsideration for the reasons set forth below.

## I. POST-LITIGATION COMMUNICATIONS ARE OUTSIDE THE SCOPE OF WAIVER ABSENT EXCEPTIONAL CIRCUMSTANCES NOT PRESENT HERE

A motion for reargument may be granted to "correct a clear error of law." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (referring to clear errors of law "or" manifest injustice in the disjunctive). In *Seagate*, the en banc Federal Circuit held that when an alleged infringer relies on opinions of counsel to defend against a charge of willful infringement, the privilege waiver does not extend to trial counsel except in exceptional circumstances. The temporal reasoning that led to that holding applies to *all* post-litigation communications. Moreover, the scope of any privilege waiver must be informed by principles of fairness and must balance competing interests. When the critical need to protect attorney-client and work product privileges is weighed against the marginal relevance of post-litigation communications, there is little reason to erect a categorical (and difficult to administer) distinction between in-house counsel and trial counsel. And although privilege waiver can extend to post-litigation communications in unique circumstances of "chicanery," no such circumstances are presented here. Accordingly, Defendants submit that this Court's decision ordering production of post-litigation communications was clear error.

### A. Advice-of-counsel privilege waivers generally do not extend to post-litigation communications after *Seagate*

In *Seagate*, the Federal Circuit made clear that when an alleged infringer relies on advice of counsel to defend against a charge of willful infringement, the resulting privilege waiver generally does not extend to post-litigation communications.[2] The question at issue in *Seagate* was whether an advice-of-counsel privilege waiver extends to trial counsel. 497 F.3d. at 1372-76. The en banc court unanimously held that, as a general matter, it does not. One of the

---

[2] Contrary to MorphoSys's contention (10/26/17 Transcript ("Tr."), at 7-8), the relevant portion of *Seagate* is still good law. *Halo* only abrogated *Seagate*'s "objective" standard for willfulness; it left *Seagate*'s privilege waiver holdings untouched. *See In re OptumInsight, Inc.*, No. 2017-116, 2017 WL 3096300, at *4 (Fed. Cir. July 20, 2017) (relying on *Seagate*'s waiver analysis).

primary reasons the court limited the waiver was a temporal one: trial counsel's communications occur only *after* the complaint is filed and such communications have "little, if any, relevance" to a claim of willful infringement. *Id.* at 1374-75. The court explained that willfulness "must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Id.* at 1374. And although the Federal Circuit acknowledged that "patent infringement is an ongoing offense that can continue after litigation has commenced," it explained that "when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement." *Id.* Any post-litigation communication is therefore of "little significance," "[f]urther outweighing any benefit of extending waiver to trial counsel." *Id.*

Although the issue in *Seagate* focused on trial counsel, the Federal Circuit's reasoning was not so limited. The decision noted that the opinions of Seagate's *opinion* counsel (received only after "suit was commenced") would also be of "marginal value." *Id.* And, on remand, the district court applied the same reasoning to exclude *in-house counsel's* post-litigation communications from the scope of the privilege waiver—even though in-house counsel had issued some of the opinions after the litigation began. *See Convolve, Inc. v. Compaq Computer Corp.*, No. 00 Civ. 5141 (GBD) (JCF), 2007 WL 4205868, at *5 (S.D.N.Y. Nov. 26, 2007).[3]

To the best of our knowledge, every *other* district court to squarely consider the issue—including a district court in the Third Circuit—has held that the rationale in *Seagate* extends to post-litigation communications of non-trial counsel. *See V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*, No. 06-2304 (FLW), 2009 WL 1968925, at *5-6 (D.N.J. July 1, 2009) (refusing to "compel production of [] post-suit documents pertaining to willful infringement . . . because

---

[3] That issue was not considered by the Federal Circuit because the orders relating to in-house counsel were not included in the petition for en banc review. *See Seagate*, 497 F.3d at 1366 n.2.

3

the willful infringement analysis focuses on prelitigation conduct"); *ProCom Heating, Inc. v. GHP Grp., Inc.*, No. 1:13CV-00163-GNS, 2016 WL 3659137, at *10-11 (W.D. Ky. May 11, 2016) (refusing to compel discovery of post-litigation communications because "*Seagate* held that the relevant opinions and communications are those which predate the . . . complaint" and a patentee asserting post-litigation willfulness "may seek a . . . preliminary injunction").

MorphoSys cited the Federal Circuit's recent decision in *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (2017), but that case had nothing to do with privilege waivers. The issue was whether a motion for a preliminary injunction was a prerequisite to presenting ongoing willful infringement to the jury. *Id.* at 1295-96. Whether a privilege waiver should be extended to post-litigation communications is a fundamentally different question that implicates unique considerations necessary to carefully guard the attorney-client relationship. And, in any event, the *Mentor Graphics* panel clearly understood the important distinction between pre-suit and post-suit communications because it analyzed what activity could properly be considered "pre-suit" and concluded that all of the acts occurred before the relevant "suit" was filed. *Id.*

**B.     The nature of post-litigation communications further confirms that they are generally outside the scope of the privilege waiver**

In determining the scope of a privilege waiver, courts must balance competing interests, consider issues of "fairness," and weigh "the prejudice to the parties of permitting or prohibiting further disclosures." *Seagate*, 497 F.3d at 1372-73; *see also, e.g.*, *Kelsey-Hayes Co. v. Motor Wheel Corp.*, 155 F.R.D. 170, 172 (W.D. Mich. 1991) (courts must consider "principles of fundamental fairness" in fashioning orders compelling production of privileged documents) (citations omitted); *Dunhall Pharm., Inc. v. Discus Dental, Inc.*, 994 F. Supp. 1202, 1205-06 (C.D. Cal. 1998) (considering "balance of competing interests"). Once a lawsuit is filed,

attorney-client communications take on a fundamentally different posture. That is certainly true of trial counsel (*see Seagate*, 497 F.3d at 1373-74), and it is similarly true of in-house counsel.

Indeed, the line between trial counsel communications (which are indisputably outside the scope of the waiver in most cases) and those of in-house counsel is amorphous at best. After suit is filed, most internal communications about the patent-in-suit are inevitably informed by communications with trial counsel. Allowing the privilege waiver to extend to post-litigation communications will, at best, give rise to a difficult to administer line-drawing exercise. At worst, such a rule would inevitably lead to the disclosure of communications at the heart of our adversarial system. This would seriously chill in-house communications and interfere with in-house counsel's need to speak freely with clients and outside counsel after suit is filed.

Because of the critical importance of "encouraging open and confidential relationships between client and attorney," *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004), courts have construed privilege waivers narrowly. *See, e.g.*, *Ampex Corp. v. Eastman Kodak Co.* No. CIV A. 04-1373-KAJ, 2006 WL 1995140, at *3-4 (D. Del. July 17, 2006) (warning that too broad an understanding of privilege waiver would "demolish[] the practical significance of attorney-client privilege"); *Applied Telematics, Inc. v. Sprint Corp.*, No. CIV.A. 94 CV 4603, 1995 WL 567436, at *2 (E.D. Pa. Sept. 21, 1995) ("the subject matter scope of the waiver is narrowly construed in patent cases"). And an attorney's status as "in-house counsel" provides no reason to "dilute" such protections. *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757-58 (D.C. Cir. 2014); *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981) (holding that communications with in-house counsel are privileged, "[c]onsistent with the underlying purposes of the attorney-client privilege").

5

As a practical matter, this Court's decision leaves alleged infringers with a Hobson's choice: either mount a vigorous defense and turn over otherwise privileged communications *during the course of litigation*, or withhold favorable evidence and risk an unwarranted finding of willfulness. As one district court explained in the context of trial counsel, "courts that insist[] on imposing very broad waivers . . . risk forcing defendants to cho[o]se between two potentially significant unfairnesses: (1) losing the confidentiality of the relationship with trial counsel that her opponent (often a competitor) would continue to enjoy, or (2) losing the ability to present the most effective defense to a claim of willfulness (sophisticated advice of counsel)." *Sharper Image Corp. v. Honeywell Int'l Inc.*, 222 F.R.D. 621, 637 (N.D. Cal. 2004); *see also Fonar Corp. v. Johnson & Johnson*, No. CIV.A. 82-2751-K, 1985 WL 186693, at *2 (D. Mass. Aug. 20, 1985) ("If courts define the scope of waivers too broadly, parties may be deterred from disclosing any documents that may be privileged for fear they will have thereby exposed themselves to discovery of a great deal of information."). Such a drastic choice might be justified if post-litigation disclosure was necessary to ensure fundamental fairness or if the post-litigation communications were of critical importance to a willful infringement claim. But for all the reasons explained above, neither is true. There are compelling reasons to draw the line when the suit is filed (absent exceptional circumstances) whether the communications involve outside trial counsel or in-house counsel. *See Dunhall Pharm.,* 994 F. Supp. at 1205-06 (explaining that the "balance of competing interests" "shifts at the time the lawsuit is filed").

    **C.**     <u>**There are no unique circumstances that justify an exception**</u>

Although there are no absolute rules concerning waiver of post-litigation privileged documents, exceptions should be limited to "unique" circumstances involving "chicanery." *Seagate*, 497 F.3d at 1374-76. As long as there are no manipulative "tactics," *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, No. 1:05-cv-01411 OWW GSA, 2009 WL 3381052, at *15 (E.D.

Cal. Oct. 15, 2009), aimed at "circumvent[ing] the waiver of privilege," *Alloc, Inc. v. Pergo, L.L.C.*, No. 00-C-0999, 2010 WL 3808977, at *6-7 (E.D. Wis. Sept. 23, 2010), the general rule limiting waiver to pre-litigation communications should apply. *See, e.g.*, *Wis. Alumni Research Found. v. Apple, Inc.*, No. 14-cv-062-wmc, 2015 WL 5009880, at *1 (W.D. Wis. Aug. 20, 2015) (finding no evidence of "trickery" or "deception").

This is not the exceptional case. The Court made no finding of "unique" circumstances and certainly did not point to any "chicanery." MorphoSys has made no allegation of gamesmanship or trickery of any kind. Indeed, when this Court asked MorphoSys what unique circumstances exist, it pointed only to this Court's claim construction order. *See* Tr. at 12. But that is plainly insufficient. A claim construction order is a routine part of every infringement case. If that is an extraordinary circumstance, then the exception would swallow the rule. In any event, claim construction is by no means dispositive. Here, for example, the adoption of Plaintiff's proposed broad construction only strengthens Defendants' invalidity defenses by stretching the claims to encompass prior art and subject matter not invented by Plaintiff.

## II. PRE-PATENT COMMUNICATIONS ARE ALSO GENERALLY OUTSIDE THE SCOPE OF THE PRIVILEGE WAIVER

A similar analysis places pre-patent communications outside the scope of the privilege waiver in most cases. Pre-patent communications are generally of little (if any) relevance to the issue of willful infringement and any marginal relevance is outweighed by the harm of adopting such an expansive privilege waiver. Although this aspect of a privilege waiver's temporal scope has apparently not been the subject of reported decisions, it too is an important issue that seems likely to reoccur after the Supreme Court's decision in *Halo*.

It is well-settled that, as a general matter, willful infringement (or, indeed, any infringement) of a patent cannot exist until the patent issues. *See State Indus., Inc. v. A.O. Smith*

7

*Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985); *see also Gustafson Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990). The scope of the patent and its claims can and do change between a patent application and an issued patent, and the actual claims may be "totally unforeseeable" until the patent issues. *State Indus., Inc.*, 751 F.2d at 1235-36. For example, none of MorphoSys's originally-filed claims survived the nearly eight years of prosecution, and the claims that issued were allowed only after significant back-and-forth with the Examiner. D.I. 213 at 2. Defendants' belief as to the invalidity or non-infringement of MorphoSys's original, non-issued claims does not fairly fall within the same subject matter as the post-patent opinions of counsel.[4] Any pre-patent communications involving different subject matter have little (if any) relevance to willful infringement, and are several steps removed from the opinions of counsel (which were provided after the patents issued). Because an expansive privilege waiver threatens to chill attorney-client communications and such concerns far outweigh any marginal relevance of pre-patent communications, the Court's decision ordering production of pre-patent communications was clear error as well.

### III. CLARIFICATION IS NEEDED ON SUBJECT-MATTER SCOPE MORE GENERALLY

Janssen's opinions of counsel relate to non-infringement and invalidity of MorphoSys's '746 and '061 U.S. patents. The scope of subject-matter waiver should extend only to privileged communications related to issues of non-infringement and invalidity of those patents—not to foreign patents which are subject to different laws, or to applications and patents which have

---

[4] Defendants agree that pre-patent communications may occasionally be probative of willfulness (*see JHU* at 4), but this is not that rare case. *Cf. Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 335 (D. Del. 2014) (explaining that an exception could be warranted where there was overwhelming evidence that defendant blatantly copied plaintiff's (patent-pending) design); *Amgen, Inc. v. Sanofi*, No. 14-1317-SLR (consolidated), 2016 WL 393857 at *2 (D. Del. Jan. 29, 2016) (pre-patent conduct possibly relevant where there is "particularly egregious behavior showing a party intent on misappropriating a competitor's proprietary technology").

8

different claims and are subject to different non-infringement and invalidity analyses.[5] *See Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 418, 421 (D. Del. 2003). Defendants ask the Court to clarify that the scope of waiver is so limited.

### IV. THIS COURT SHOULD ALTERNATIVELY CERTIFY THE TEMPORAL SCOPE ISSUES FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. 1292(b)

In the alternative, this Court should certify the temporal issues for interlocutory appeal under 28 U.S.C. § 1292(b). Certification is appropriate when the order involves a "controlling question of law" about which there is a "substantial ground for difference of opinion" and the appeal may "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The temporal scope of privilege waiver is a "controlling question of law" which, at the very least, leaves "substantial ground for difference of opinion" and will "materially advance the ultimate termination of the litigation." *In re Montgomery Ward & Co.*, No. 97-1409 PJW, CIVA 01-421 JJF, 2006 WL 2989270, at *1 (D. Del. Oct. 18, 2006).

The conflict between this Court's decision and other district courts (including in the Third Circuit) demonstrate a "substantial ground for difference of opinion" on this important question. The fact that a similar issue was presented in another case pending in this Court (*i.e.*, *JHU*) is additional evidence of the need for timely Federal Circuit review. And contrary to this Court's suggestion in *JHU* (at 5), courts have recognized that privilege disputes can present "controlling issues of law" whose resolution may "materially advance" the litigation. *See, e.g.*, *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 293 (6th Cir. 2002) (attorney-client privilege issue presents "controlling question of law"); *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. 13-284, 2014 WL 3887750, at *5 (E.D. Pa. Aug. 7, 2014);

---

[5] If MorphoSys insists that privileged communications regarding its European patent counterpart is "the same subject matter" for purpose of privilege waiver, it should not be allowed to later move to exclude from trial evidence that its European patent was revoked.

9

*Coleman v. Sterling*, No. 09-CV-1594 W (BGS), 2012 WL 12952831, at *3 (S.D. Cal. Feb. 21, 2012). Even though "the need for a trial [may] not be affected by an interlocutory appeal, the course of discovery and the ensuing trial would be affected." *Henriquez-Disla*, 2014 WL 3887750, at *6. If the case were instead to proceed "in the ordinary course," and the privilege ruling were reversed on appeal, "a second trial could be required" and, even then, "it might be impossible to undo the effects of disclosure." *Coleman*, 2012 WL 12952831, at *3.[6]

That is why "district courts should not hesitate to certify an interlocutory appeal" of a "privilege ruling" that "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110 (2009); *see also Kimberly-Clark WorldWide Inc. v. First Quality Baby Prod. LLC*, 407 F. App'x 431, 432 (Fed. Cir. 2011) (granting interlocutory review of privilege ruling); *but cf. In re OptumInsight, Inc.*, No. 2017-116, 2017 WL 3096300, at *4 (Fed. Cir. July 20, 2017) (noting denial of § 1292(b) appeal but considering privilege ruling on mandamus). Certification is warranted here for both reasons.

## V. CONCLUSION

Defendants respectfully request that this Court grant reargument, clarify the scope of its order, and/or certify the temporal issues for interlocutory appeal under 28 U.S.C. § 1292(b).

---

[6] Concerns about delay are addressed in Defendants' separate motion for bifurcation of willfulness or a stay.

10

<table>
<tr><td>

OF COUNSEL:

Michael A. Morin
David P. Frazier
Emily K. Sauter
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
(202) 637-2200

Roger J. Chin
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

Michael R. Seringhaus
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94306
(650) 328-4600

November 9, 2017

</td><td>

MORRIS, NICHOLS, ARSHT &TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendants Janssen Biotech, Inc., Genmab US, Inc., and Genmab A/S*

</td></tr>
</table>

11

## **RULE 7.1.1 CERTIFICATE**

I hereby certify that the subject of the foregoing motion has been discussed with counsel for the plaintiff and that we have not been able to reach agreement.

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 9, 2017, upon the following in the manner indicated:

| | |
|---|---|
| Kelly E. Farnan, Esquire<br>Christine D. Haynes, Esquire<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| James F. Hurst, Esquire<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Patricia A. Carson, Esquire<br>Christopher T. Jagoe, Esquire<br>Aaron D. Resetarits, Esquire<br>Christopher Ilardi, Esquire<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)